

EOD
04/30/2010

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

IN RE:                          §
                                §
ENERGYTEC, INC., et al,         §         CASE NO. 09-41477
                                §         (Chapter 11)
        Debtors.                §

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Wickford, Inc. ("Wickford") and TCRG Drilling & Operating, LLC ("TCRG") seek an administrative expense claim and super-priority lien in the amount of $79,036.76, which represents the gross value of oil allegedly produced from several leases from September 2009 through December 2009. Energytec, Inc. ("Energytec") and Comanche Well Service Corporation ("Comanche") seek to deduct their alleged expenses from the gross value of the oil thereby reducing or eliminating Wickford's administrative claim. This matter is before the Court following a hearing on the *Debtors' Production/Expense Statement Pursuant to Order Denying TCRG Drilling & Operating, LLC's Motion for Relief from the Automatic Stay Against Certain Wells in the Jennie Belcher Lease and Setting Deadlines*. At the hearing, Wickford and TCRG argued, among other things, that Energytec and Comanche were bad faith trespassers and may not deduct any expenses from the income produced by the leases at issue.

The Court, having considered the evidence, the parties' oral arguments, and the briefs filed by the parties in support of their respective positions, makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. On November 18, 2009, Wickford and TCRG filed an adversary complaint against Energytec and Comanche. The parties' dispute in that proceeding related to the production of oil from two properties referred to as the "Jennie Belcher" property or lease and the "Garbade" property or lease.

2. On December 17, 2009, the Court entered *Findings of Fact and Conclusions of Law* and a *Judgment* in the adversary proceeding. The Court concluded, among other things, that Energytec's leases on the Jennie Belcher and Garbade properties terminated for lack of production in paying quantities prior to April 1, 2009.

3. On December 22, 2009, Energytec and Comanche filed their production/expense statement associated with the leases on the Jennie Belcher and Garbade properties. Energytec and Comanche seek to offset the post-termination income from these properties with various expenses incurred after April 1, 2009.

4. Sixteen oil wells are located on the Belcher property. However, only two wells were pumped on the Belcher property from late August 2009 until the end of November 2009. A third well was pumped from December 1, 2009, until December 18, 2009, when all production ceased.

5. Twenty-six oil wells are located on the Garbade property. However, only two wells were pumped on the Garbade property during September 2009. No wells were pumped on the Garbade property in October and November 2009. One well was pumped from approximately December 1, 2009, through December 18, 2009, when all production ceased.

6. In their production/expense statement, Energytec and Comanche inadvertently included proceeds from the sale of oil that was produced prior to April 1, 2009. When this error is corrected, Energytec and Comanche's revenue (net of royalties and taxes) from September 2009 through December 2009 was as follows:

| Date | Garbade | Belcher |
|---|---|---|
| Sept. 2009 | $5,132.22 | $7,632.30 |
| Oct. 2009 | | |
| Nov. 2009 | | $20,681.95 |
| Dec. 2009 | $4,154.26 | $10,828.96 |
| TOTAL | $9,286.68 | $39,143.21 |

7. The production/expense statement submitted by Energytec and Comache seeks to deduct from this revenue their alleged direct costs as well as overhead.

8. Their method for allocating overhead as well as the direct cost of "field labor and labor burden" is based on the total number of wells located on each lease. They did not allocate overhead or costs based on the number of wells that were actually producing oil at any given time. Consequently, they are seeking to deduct overhead and labor costs from revenues attributed to the Belcher and Garbade properties in periods during which there was no production from the properties.

9. Energytec and Comanche produce oil on properties other than the Jennie Belcher and Garbade properties. Energytec and Comanch operated 76 wells, excluding the 42 wells on the Belcher and Garbade properties, from September 2009 through December 2009.

10. The overhead expenses described in the production/expense statement do not relate to the lifting of oil from producing wells on the Belcher or Garbade leases or the placement of that oil in storage tanks. Instead, these expenses were general overhead

that Energytec and Comanche incurred regardless of whether they were pumping the wells on the Belcher or Garbade properties.

11. The $1,650 in direct expenses incurred under the category "Cap Ex" were for work on a road on the Belcher lease.

12. The direct lease operating expenses under the category "LOE" included more than $10,000 for the cost of supervision. These "supervision" costs were merely an allocation of corporate overhead, and Energytec and Comanche would have incurred this expense regardless of whether they produced oil from the wells on the Belcher and Garbade properties.

13. The direct lease operating expenses under the category "LOE" also included electrical and repair expenses, among other things, incurred from September 2009 through December 2009. Energytec and Comanche did not establish that these expenses were specifically associated with wells on the Belcher and Garbade properties.

14. Energytec and Comanche did not incur any expenses to dispose of salt water produced from the Belcher or Garbade properties.

## CONCLUSIONS OF LAW

1. Under Texas law, as of April 1, 2009, Energytec and Comanche became trespassers with respect to continued operations of the Belcher and Garbade properties. *See Natural Gas Pipeline of America v. Pool*, 30 S.W.3d 639, 651 (Tex. App. – Amarillo 2000), rev'd on other grounds, 124 S.W.3d 188 (Tex. 2003).

2. When a producer trespasses and extracts oil, gas, or other minerals, the method by which damages are calculated depends on whether the producer's actions are in good faith.

3.  If a producer trespasses in good faith, the measure of damages is the value of the minerals minus drilling and operating costs. *See Moore v. Jet Stream Investments, Ltd.,* 261 S.W.3d 412, 428 (Tex. App. -- Texarkana 2008) (citing *Mayfield v. de Benavides,* 693 S.W.2d 500, 506 (Tex. App. -- San Antonio 1985, writ ref'd n.r.e.) and *Bender v. Brooks,* 103 Tex. 329, 335, 127 S.W. 168, 171 (1910)). In contrast, the measure of damages for bad faith trespass is "'the value of the things mined at the time of severance without making deduction for the cost of labor and other expenses incurred in committing the wrongful act ... or for any value he may have added to the mineral by his labor.'" *Id.* at 429 (citing *Mayfield,* 693 S.W.2d at 506.

4.  "To be in good faith in developing a tract of land for oil or gas, one must have both an honest and a reasonable belief in the superiority of one's title." *Id.* at 428 (citing *Mayfield,* 693 S.W.2d at 504; *Gulf Prod. Co. v. Spear,* 84 S.W.2d 452, 457 (1935)).

5.  Here, the source of the parties' dispute about the right to operate the leases at issue related to the effect of Energytec's intervening bankruptcy. Energytec and Comanche, for example, opposed TCRG's application to operate the Jennie Belcher lease on the grounds that the lease was property of Energytec's bankruptcy estate. Energytec and Comanche acted with an honest, though mistaken, belief in the superiority of their alleged interest in the leases at issue.

6.  The Court concludes that Energytec and Comanche acted in good faith.

7.  Wickford and TCRG do not dispute that Energytec and Comanche incurred expenses in order to produce oil from the Belcher and Garbade properties. They object, however, to the allocation of costs by Energytec and Comanche.

8. In particular, by allocating their "Field Labor and Labor Burden" expenses based on the total number of wells located on each lease, Energytec and Comanche have overstated their expenses with respect to the Belcher and Garbade leases. Energytec and Comanche were operating only a handful of wells on these leases, but they are seeking to charge Wickford and TCRG with 36% of their "Field Labor and Labor Burden" expense. Energytec and Comanche arrived at this allocation based on the total number of wells on the Belcher and Garbade leases (42 wells or 36% of the total number of wells operated by Energytec and Comanche).

8. Energytec and Comanche did not establish how many wells were producing oil on leases other than the Belcher and Garbade leases. If all 76 of the wells located on the other leases were producing oil from September 2009 through December 2009, then their direct lease operating expenses could be allocated as follows:

|  | **Expenses** | **Belcher** | **Garbade** |
|---|---|---|---|
| Sept. Labor – 80 wells | $30,033.10 | $900.99 (3% (2/80)) | $900.99 (3% (2/80)) |
| Oct. Labor – 78 wells | $33,061.29 | $991.84 (3% (2/78)) | |
| Nov. Labor – 78 wells | $33,021.78 | $990.65 (3% (2/78)) | |
| Dec. Labor – 80 wells | $18,244.70 | $729.79 (4% (3/80)) | $182.45 (1% (1/80)) |
| TOTALS: | $114,360.18 | $3,613.27 | $1,083.44 |

9. The damages incurred by Wickford and TCRG should be reduced by these direct labor expenses. The damages incurred by Wickford and TCRG also should be reduced by pumper costs of $1,987.65 each month, from September 2009 through December 2009, for each lease. In addition, with respect to the Belcher lease, the damages incurred by Wickford and TCRG should be reduced by $1,650 for the work done on a road on the Belcher lease.

10. Energytec and Comanche are not entitled to deduct overhead expenses. Such expenses are not deductable by a good faith purchaser unless the expenses are direct overhead expenses that would be eliminated if the wells were not produced. *See Ladd Petroleum Corp. v. Eagle Oil & Gas Co.*, 695 S.W.2d 99, 108 (Tex. App. – Fort Worth 1985, writ ref. n.r.e.). Energytec and Comanche failed to show that any of the expenses included in their overhead allocation meet this standard.

11. The Court, therefore, concludes that Energytec and Comanche may deduct the total amount of $9,034.04 from the revenue for the Garbade lease from September 2009 through December 2009. Since the production from the Garbade property totaled $9,286.68 from September 2009 through December 2009, this means that Wickford and TCRG are entitled to an administrative expense claim in the amount of $252.64 relating to this lease.

12. The Court further concludes that Energytec and Comanche may deduct the total amount of $13,213.87 from the revenue from the Belcher lease from September 2009 through December 2009. Since the production from the Belcher property totaled $39,143.21 from September 2009 through December 2009, this means that Wickford and TCRG are entitled to an administrative expense claim in the amount of $25,929.34 relating to this lease.

13. Wickford and TCRG shall submit an order consistent with the Court's findings and conclusions within fourteen calendar days.

14. Any finding of fact that is construed to be a conclusion of law is hereby adopted as such. Likewise, any conclusion of law that is construed to be a finding of fact is adopted as such.

Signed on 4/30/2010



_____  SR
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

7